# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THOMAS GRAY and MARIE A. GRAY, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF REVERE;  BRIAN ARRIGO, ) | Civil Action No. |
| Mayor of Revere; PAUL CAPIZZI, City ) | 16-10580-FDS |
| Solicitor; BENJAMIN DeCHRISTOFORO, ) | |
| Building Inspector; MARK LOCKE, ) | |
| Plumbing Inspector; MICHAEL CONLEY, ) | |
| Electrical Inspector; THOMAS ) | |
| AMBROSINO, Former Mayor of Revere; ) | |
| LOVENBERG AND ASSOCIATES P.C.; ) | |
| BURNS & LEVINSON, LLP; FRANK ) | |
| FOSS RUSSELL; and D'AMBROSIO ) | |
| BROWN, LLP, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTIONS TO DISMISS

**SAYLOR, J.**

This is a *pro se* action arising out of a zoning dispute between two property owners and the City of Revere. The city prevailed in the underlying zoning dispute after a 2009 bench trial in state District Court, and the Appellate Division affirmed that decision in early 2011.

Plaintiffs Thomas and Marie Gray have now brought suit against the City of Revere, various city officials and inspectors, and multiple law firms that allegedly represented them in their zoning dispute with the city. Defendants have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Although the complaint is difficult to understand, it appears to assert claims for "double jeopardy," "perjury," and a number of tort actions, including intentional infliction of emotional distress, defamation, conspiracy, fraud, and legal malpractice. (Compl. 2, 6).[1] It is highly doubtful that the complaint—no matter how liberally construed—states a plausible claim upon which relief can be granted.

Nonetheless, even assuming that the complaint states a claim for any of the causes of action pleaded, the zoning dispute and subsequent appeal occurred more than five years ago. Therefore, the claims are time-barred by the applicable three-year statutes of limitations. Accordingly, defendants' motions to dismiss will be granted.

## I.  Background

It is difficult to piece together the factual background of this matter from the allegations in the complaint. Accordingly, the Court relies in part on the decision of the Appellate Division of the District Court to provide the historical background. The complaint refers to that decision, which is an official public record, several times.[2] To the extent that the complaint pleads facts not otherwise described in the Appellate Division's opinion, the Court accepts them as true.

### A.  Factual Background

#### 1.  State Court Proceedings

In 1980, plaintiffs Thomas and Marie Gray purchased a house located at 17 Vinal Street

---

[1] References are to the page numbers of the complaint, because it does not contain paragraph numbers.

[2] (*See Compl.* 3-5). On a motion to dismiss, the Court may properly take into account four types of documents outside the complaint without converting the motion into one for summary judgment: (1) documents of undisputed authenticity; (2) documents that are official public records; (3) documents that are central to plaintiff's claim; and (4) documents that are sufficiently referred to in the complaint. *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993); *see also Romani v. Shearson Lehman Hutton*, 929 F.2d 875, 879 n.3 (1st Cir. 1991) (considering securities-offering documents submitted by defendants with motion to dismiss for claim of securities fraud); *Fudge v. Penthouse Int'l, Ltd.*, 840 F.2d 1012, 1014-15 (1st Cir. 1988) (considering allegedly libelous article submitted by defendants with motion to dismiss).

2

in Revere, Massachusetts. The house was located in a zoning district that allowed two-family dwellings.

In 1987, plaintiffs obtained a building permit from the city to convert the house into a three-family dwelling and rent it to tenants. However, the city's review board later informed the building inspector that plaintiffs' proposed alteration would in fact create a four-family dwelling. The city's building inspector notified plaintiffs that the permit did not allow a four-family dwelling. As a result, plaintiffs reached an agreement with the city to limit the use of the property in accordance with the permit.

In 1996, the building inspector, responding to a complaint, went to the property. He discovered that plaintiffs had converted the house into a four-family dwelling. In 1998, after issuing a cease and desist order that plaintiffs ignored, the city filed an enforcement action against plaintiffs. In 2006, the city filed another enforcement action against plaintiffs, along with criminal complaints. For reasons that are not addressed by the parties and otherwise unclear from the record, those complaints were dismissed.

During a 2007 inspection, the building inspector discovered a fifth apartment in the house on plaintiffs' property. In November 2007, the city again notified plaintiffs that they were violating the building code and zoning ordinance. Three weeks later, the city ordered plaintiffs to remove all surplus apartment units, kitchens, bathrooms, and wiring that were constructed without permits, and to restore the house to a two-family dwelling.

After plaintiffs did not respond to the demand, the city brought suit against plaintiffs in the Chelsea District Court for injunctive relief to enforce the Massachusetts building code and the city's zoning ordinance. In May 2009, after a bench trial, the District Court enjoined plaintiffs from using the premises for any purpose other than as a two-family dwelling. It also

imposed monetary penalties and ordered plaintiffs to apply for applicable permits in order to begin removing the additional units.

In early 2010, after consulting with numerous law firms, plaintiffs sought to appeal the District Court's order to the Appellate Division.  The District Court granted plaintiffs several extensions to perfect their notice for appeal.

On February 16, 2011, the Appellate Division of the District Court dismissed the appeal for numerous procedural and substantive reasons, including plaintiffs' "misstep [after] misstep, as the Grays, exercising the same lack of alacrity they exercised in not responding to the building inspector's notices, failed to state the issues of law to be reviewed, failed to order a recording of the trial, failed even to pay a filing fee for the appeal, all despite the trial court's generous *sua sponte* extensions of time to perfect the appeal." (Docket No. 9-1 at 4).  The Appellate Division also concluded that plaintiffs "had ample [alternative] remedial opportunities" to seek relief from the city's zoning ordinance, and that they were "fully aware since 1987 that they have never had a permit to alter the use of their building to anything more than a two-family dwelling." (*Id.* at 5).

After the dismissal of plaintiffs' appeal, it appears that no other events occurred in state court that are relevant to this action.

### 2. **The Complaint**

As it is difficult to summarize the disjointed allegations of the complaint, the Court will provide a sampling.

Beginning with the claims against the city of Revere and the six individual city defendants, the complaint alleges that Brian Arrigo, the mayor of Revere, committed "double jeopardy" with "no pretrial hearing[,] or case management hearing[, or] jury trial." (Compl. 5).

It alleges that Paul Capizzi, the city solicitor, "told [plaintiffs] that he was going to make an example of [them]," "changed the paperwork at the assessor's office to a two-family from a non-conforming three-family house," and "stole money from [plaintiffs' tenants] . . . and stole [$]17,800 from [plaintiffs'] GM mortgage." (*Id.* at 2, 5). The complaint alleges that former mayor Thomas Ambrosino "is [now] the human resource officer for the Supreme Court" and "intercepted three letters that [plaintiffs] sent to Judge Grant of the Supreme Court." (*Id.* at 2, 5).³

The complaint alleges that the city building inspector (Benjamin DeChristoforo), plumbing inspector (Mark Locke), and electrical inspector (Michael Conley) essentially fabricated false accusations concerning the property's non-conformance with zoning regulations. (*See id.* at 2, 5). For example, it alleges that Locke "made a lot of false accusations about the plumbing[, including that plaintiffs'] shower was too small [with] no ruler[,] and [plaintiffs] had sewage dumping outside[,] and he was on the wrong side of my house[,] he should've been in the attic on the left-hand side under my garages looking for another apartment[.]" (*Id.* at 5).

The complaint also asserts claims against three law firms and one individual lawyer. The complaint alleges that now-disbarred attorney Frank Foss Russell, who apparently represented plaintiffs in their appeal before the Appellate Division, lied to the court and stole from plaintiffs' tenants. (*Id.* at 6). It alleges that Lovenberg and Associates, P.C. "never put in what [plaintiffs] wanted in [their] appeal[,] didn't file the filing fee, [and] [l]ost [their] case . . . on purpose." (*Id.* at 5). It alleges that Burns & Levinson, LLP initially agreed to represent plaintiffs but "quit on [them] the last day [before] the appeal had to be filed . . . ." (*Id.* at 5-6). Finally, although it is unclear how the allegations against D'Ambrosio Brown, LLP relate to the other allegations, the

---

³ It is unclear if this is intended as a reference to Chief Justice Gants. There was no Judge "Grant" involved at the District Court or Appellate Division.

complaint alleges that the firm "tried to foreclose on [plaintiffs'] house at 385 Fenno Street [in] Revere." (*Id.* at 6). The 385 Fenno Street property appears to be unrelated to the 17 Vinal Street property, which was the subject of the zoning dispute between plaintiffs and the city.

The complaint concludes by demanding $10 million in damages from the city defendants and $2 million from each of the law firm defendants "for emotional distress[,] conspiracy[,] defamation[,] and perjury." (*Id.* at 6).

### B.   Procedural Background

Plaintiffs filed the complaint on March 24, 2016, alleging that jurisdiction was based on diversity of citizenship. Because the complaint states that plaintiffs reside in Dracut, Massachusetts, the Court ordered plaintiffs to show cause why the complaint should not be dismissed for lack of subject-matter jurisdiction. On April 11, 2016, plaintiffs responded to the Court's order by stating that they live in Lockport, New York and travel to Massachusetts for part of the year to see their daughter. Plaintiffs also submitted copies of their New York driver's licenses. Based on that proffer, the Court tentatively concluded that the *pro se* plaintiffs had adequately pleaded complete diversity of citizenship.

Defendants have moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

## II.   Legal Standard

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must

be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

A document filed by a *pro se* party "is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); *see also* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). However, while *pro se* complaints are accorded an "extra degree of solicitude", *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir. 1991), they still must "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1998).

### III. <u>Analysis</u>

It is doubtful that the complaint, even under the most generous level of scrutiny, satisfies Rule 12(b)(6) by alleging facts sufficient to state a claim for intentional infliction of emotional distress, defamation, conspiracy, negligence, fraud, or legal malpractice. Nonetheless, for the

purposes of defendants' motions, the Court will assume that the complaint states a claim for at least one of the tort causes of action pleaded.

However, the zoning dispute underlying plaintiffs' complaint began in state court in 2007, and it appears that none of the allegations in the complaint concern events after plaintiffs' appeal was dismissed in February 2011. Plaintiffs filed their complaint in this action five years after that dismissal. Because the applicable limitations periods for all of the claims pleaded in the complaint are less than five years, the complaint will be dismissed.

### A. The City Defendants

Liberally construed, the complaint's allegations against the city defendants might support claims for negligence, intentional infliction of emotional distress, defamation, conspiracy, or fraud.

The Massachusetts limitations period for actions arising out of negligence, including negligent infliction of emotional distress, is three years. Mass. Gen. Laws ch. 260, § 2A. The same three-year limitations period applies to claims for defamation and intentional infliction of emotional distress. *Id.; see also Salcedo v. Town of Dudley*, 629 F. Supp. 2d 86, 97 (D. Mass. 2009). Three years is also the relevant limitations period for civil conspiracy claims. Mass. Gen. Laws ch. 260, § 2A; *see also Sexual Minorities Uganda v. Lively*, 960 F. Supp. 2d 304, 332 (D. Mass. 2013). Finally, the limitations period for common-law fraud claims is three years in Massachusetts. *See Pilalas v. Cadle Co.*, 695 F.3d 12, 14 (1st Cir. 2012). Accordingly, plaintiffs' claims are time-barred unless they accrued less than three years before March 24, 2016, the date that plaintiffs filed the complaint in this action.

Even assuming that the city defendants' allegedly tortious conduct caused plaintiffs injury, that injury accrued no later than February 2011, when the Appellate Division dismissed

8

plaintiffs' appeal. For example, the complaint alleges that the building, plumbing, and electrical inspectors all made "false accusations" about plaintiffs' lack of compliance with zoning regulations. Although the complaint is not entirely clear, it appears that defendants made those accusations in 2009 while testifying during the bench trial in the District Court.

Accordingly, plaintiffs' claims against the city defendants will be dismissed because they are time-barred by the applicable Massachusetts statutes of limitations.

### B. The Law Firm Defendants

The complaint's allegations against the law firm defendants could arguably support a claim for legal malpractice, in addition to the claims discussed above. The Massachusetts limitations period for legal malpractice claims is three years. Mass. Gen. Laws ch. 260, § 4; *see also St. Paul Fire and Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP*, 379 F. Supp. 2d 183, 196 (D. Mass. 2005). Under Massachusetts law, a malpractice claim accrues and the limitations period begins to run "once [a] client or former client knows or reasonably should know that he or she has sustained appreciable harm as a result of the lawyer's conduct . . . ." *Rosen Constr. Ventures, Inc. v. Mintz, Levin, Cohn, Ferris, Glovsky and Popeo, P.C.*, 364 F.3d 399, 405 (1st Cir. 2004).

The complaint's allegations against the law firms concern their actions in litigating plaintiffs' appeal from the District Court's May 2009 order. The Appellate Division dismissed that appeal in February 2011. Therefore, plaintiffs should have reasonably known of their alleged injury as a result of the attorneys' alleged malpractice, at the latest, by March 2011. Because the harm accrued more than three years before plaintiffs filed their complaint in this action, their claims against the law firm defendants are time-barred and will be dismissed.

## IV. <u>Conclusion</u>

In summary, plaintiffs' claims for negligence, intentional infliction of emotional distress, defamation, conspiracy, fraud, and legal malpractice all arise out of events that occurred from 2009 to—at the latest—early 2011. Accordingly, plaintiffs' claims are barred by the applicable Massachusetts statutes of limitations, and defendants' motions to dismiss are therefore GRANTED.

**So Ordered.**

                                              /s/ F. Dennis Saylor
                                              F. Dennis Saylor IV
Dated: June 22, 2016                     United States District Judge